**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

MAY 2 2 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                                    **CIVIL ACTION NO. 2:07cv491**

**CODY BEDFORD**
**and**
**BEDFORD TREE SERVICE, INC.,**

        **Defendants.**

## FINAL ORDER

On October 30, 2007, the United States filed a complaint seeking injunctive relief and civil penalties against Cody Bedford and his company, Bedford Tree Service, Inc., for unauthorized discharge of pollutants into waters of the United States, in violation of the Clean Water Act. See 33 U.S.C. §§ 1311, 1344. The case was referred on October 10, 2008, to United States Magistrate Judge Tommy E. Miller to conduct an evidentiary hearing and to submit a report and recommendation. See 28 U.S.C. § 636(b)(1)(B) and (C); Fed. R. Civ. Pro. 72(b); E.D. Va. Loc. Civ. R. 72. The Magistrate Judge held an evidentiary hearing on October 22, 2009, at which defendants did not appear.

On February 12, 2009, the Magistrate Judge submitted a report and recommendations ("R&R"). The R&R advised the parties of their right to file written objections. Although defendants filed no objections, the government filed a motion to modify the R&R on March 2, 2009. In an order dated March 23, 2009, the court stated

that it viewed the government's motion to modify as an objection, to be addressed in this Final Order.

Other than the government's objection, which the court **SUSTAINS**,[1] the court **ADOPTS AND APPROVES** the R&R submitted by the Magistrate Judge on February 12, 2009.  Thus, the Clerk shall enter default judgment against defendants under Federal Rule of Civil Procedure 55(b), and shall enter judgment for the United States in the amount of $90,000 against defendants jointly and severally.

## I. Revision to Footnote 3

Having examined the government's objection to the law stated in Footnote 3 on page 15 of the R&R, and having made de novo findings as to this issue, the court **SUSTAINS** the government's objection.  Accordingly, the court **REVISES** Footnote 3 as follows:

> The Seventh and Ninth Circuit Courts have concluded that waters that satisfy Justice Kennedy's standard in Rapanos are within the scope of the Clean Water Act.  See United States v. Gerke Excavating, Inc., 464 F.3d 723, 724 (7th Cir. 2006); N. California Watch v. City of Healdsburg, 496 F.3d 993, 999-1000 (9th Cir. 2007).  The First Circuit has held that the United States can prove jurisdiction by meeting either the plurality's or Justice Kennedy's standard in Rapanos.  See United States v. Johnson, 467 F.3d 56, 66 (1st Cir. 2006).  However, the Eleventh Circuit held in United States v. Robison, 505 F.3d 1208, 1221 (11th Cir. 2007), that only the Kennedy standard can be used to establish Clean Water Act jurisdiction.  The Fifth and Sixth Circuits declined to decide which standard controlled Clean Water Act jurisdiction because the waters at issue in those cases met both Justice Kennedy's and the plurality's standards.  United States v. Lucas, 516 F.3d 316, 327 (5th Cir. 2008); United States v. Cundiff, 555 F.3d 200, 210-13 (6th Cir. 2009).

---

[1] See infra Part I.

2

## II. Imposition of a Deed Restriction

The Magistrate Judge recommended that the court "create a conservation easement or deed restriction ensuring preservation of the southernmost twenty-four acres of wetlands on the Bedford Site."[2] (R&R 27). On March 2, 2009, the government asked the court for time to complete negotiations with Jack Taylor, who holds the mortgage to the Bedford Site, and to recommend whether the court should impose a conservation easement or a deed restriction. On March 23, 2009, the court granted the government 30 days to complete its negotiations and 45 days to make its recommendation to the court.

On May 7, 2009, the government filed a motion describing the result of its negotiations and recommending that the court impose a deed restriction on the wetlands area of the Bedford Site.[3]

_____

[2] The Bedford Site is a 33-acre parcel of land owned by Cody Bedford. It is located between 1315 and 1317 Mill Landing Road, Virginia Beach, Virginia, and identified as GPIN 2319792629000. (R&R 2.)

[3] The government recommends a deed restriction on 23.25 acres — rather than 24 acres — of wetlands on the Bedford Site. The Magistrate Judge recommended a 24-acre deed restriction or conservation easement based on expert testimony "that a twenty-to-one ratio is an appropriate remedy for the violations at the Bedford Site," requiring preservation of "twenty-four acres of existing wetlands . . . to off-set the damage caused when the Defendants cleared and filled 1.277 acres of wetlands." (R&R 21.) As the government did not timely object to the Magistrate Judge's recommendation of preserving 24 acres, this issue does not require the court's de novo review. Moreover, the subordination agreement between the United States and Jack Taylor provides for a deed restriction that "does not exceed 24 acres," showing that the mortgagee has agreed to a abide by the terms of a deed restriction on a full 24 acres of the Bedford Site. (Mot. to Impose a Deed Restriction Ex. A.)

3

Defendants did not respond to the government's motion.   After reviewing the government's recommendation, the court **FINDS** that the imposition of a deed restriction, together with the existing subordination agreement,[4] will ensure that these wetlands are protected in perpetuity.   Accordingly, the court **ORDERS** the imposition of a deed restriction on the southernmost 24 acres of wetlands ("the Protected Area") of the Bedford Site.  Specifically, the court **ORDERS**:

A.   <u>Restrictions</u>: All activities that alter or destroy the natural state of the Protected Area are prohibited. These prohibited activities include, but are not limited, to:

1.   <u>General</u>: Destruction, filling, excavation, or alteration of the Protected Area;

2.   <u>Structures</u>: The construction of man-made structures on, in, over, or above the ground or any water body, including — but not limited to — the construction, removal, placement, preservation, maintenance, alteration, or decoration of any buildings, fences, roads, utility lines, or billboards or other advertising;

3.   <u>Soils</u>: The removing, excavating, disturbing, or dredging of soil, sand, peat, gravel, or aggregate material of any kind; or any change in the topography of the land, including any discharging of dredged or fill material, ditching, extracting,

---

[4] On April 20, 2009, the United States entered into a subordination agreement with Jack Taylor ("Taylor"), who holds the mortgage to the Bedford Site.  (Mot. to Impose a Deed Restriction 2; Ex. A.)  The subordination agreement ensures protection of these wetlands if Taylor forecloses on the mortgage.  <u>Id.</u>  In the event of foreclosure, Taylor must place a conservation easement on the Bedford Site that is coextensive or more protective of the property than the court's deed restriction, or Taylor's interest in the Bedford Site will be subordinated to this Final Order.  <u>Id.</u>

drilling, pile driving, mining, or excavating of any kind;

4. <u>Drainage</u>: Ditching, draining, diking, damming, filling, excavating, grading, plowing, flooding, ponding, mining, drilling, or removing/adding topsoil, sand, or other materials;

5. <u>Hydrology</u>: Modifications to the hydrology of the Protected Area, either directly or indirectly, that would allow more water onto, or that would drain water away from, the Protected Area. Prohibited modifications include, but are not limited to: ditching, changing any water-control structures, repairing drainage tiles, or altering any naturally occurring structures;

6. <u>Wastes or Debris</u>: The storing, dumping, depositing, abandoning, discharging, or releasing of any gaseous, liquid, solid, or hazardous waste substance, material, trash, or debris, whether on, in, over, or under the ground, or into surface or ground water;

7. <u>Non-Native Species</u>: The planting or introducing of non-native species;

8. <u>Removal of Vegetation</u>: Cultivating, harvesting, cutting, mowing, removing, destroying, logging, planting, pruning of trees and plants, except as the United States Army Corps of Engineers ("Corps") finds necessary to control invasive species that threaten the natural character of the Protected Area;

9. <u>Herbicides, Insecticides, and Pesticides</u>: The use of insecticides, pesticides, herbicides, or other chemicals (including fertilizers), except as the Corps finds necessary to control invasive species that threaten the natural character of the Protected Area. State-approved municipal application programs needed to protect the public health and welfare are excluded from this prohibition;

10. <u>Agricultural, Livestock, and Other Activities</u>: Conversion of, or expansion into, any portion of the Protected Area for agricultural, horticultural, aquacultural, silvicultural, livestock production, or grazing activities;

11. <u>Motorized Vehicles</u>: Operation of construction machinery, snowmobiles, dune buggies, motorcycles, all-terrain vehicles, or any other types of motorized vehicles;

12. <u>Other Material Impairment</u>: Other acts, uses, or discharges that adversely affect fish or wildlife habitat or the preservation of lands, wetlands, or water areas in the Protected Area;

B. <u>Inspection, Enforcement, and Access Rights</u>: The Corps, the United States Environmental Protection Agency ("EPA"), and their authorized agents shall have the right to enter and go upon the Protected Area at reasonable times to enforce and monitor compliance with this deed restriction. When practicable, the property owner shall receive prior reasonable notice of entry. The Corps and the EPA shall have the right to enforce this deed restriction by legal, equitable, and administrative proceedings to prevent any activity on or use of the Protected Area that is inconsistent with this deed restriction, and to require the restoration of any areas or features of the Protected Area that may be damaged by inconsistent activity or use. Failure by the Corps or any owner to enforce any of these restrictions shall not waive the right to later do so;

C. <u>Duration</u>: This deed restriction shall run with the land in perpetuity; and

D. <u>Transfer</u>: The terms and conditions of this deed restriction shall be both explicitly included in any transfer, conveyance, or encumbrance of the Protected Area or any part of it, and any instrument of transfer, conveyance, or encumbrance affecting all or any part of the Protected Area shall set forth the terms and conditions of this deed restriction.

The Clerk is **DIRECTED** to forward a copy of this Final Order to the Assistant United States Attorney, and to Cody Bedford at the address on file with the court.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
United States District Judge

REBECCA BEACH SMITH
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 22, 2009